WIDENER, Circuit Judge,
concurring and dissenting:
I concur in or dissent from parts of the various opinions of the court and its various members, as indicated below, and I also respectfully dissent to the failure of the court to review the items of the judgment of the district court from which appeal is taken.
I.
We review judgments, not opinions, e.g. Chevron USA, Inc. v. Natural Res. Def. Council, 467 U.S. 837, 842, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984); Hyatt v. Sullivan, 899 F.2d 329, 337 n. 10 (4th Cir.1990). The judgment of the district court, a copy of which is attached hereto as Exhibit A, is divided into five parts, which are:
1. The Charlotte-Mecklenburg schools are declared unitary in all respects;
2. All prior injunctive orders or decrees in the Swann case are vacated and dissolved and the case is dismissed with prejudice;
*357 3. The Charlotte-Mecklenburg school system shall pay nominal damages to the Plaintiff Intervenors in the amount of $1;
4. Charlotte-Mecklenburg schools are enjoined from assigning children to schools or to allocate educational opportunities on the basis of race;
5. The Charlotte-Mecklenburg school system will pay reasonable attorneys fees, expert fees and costs of the Plaintiff-In-tervenors.
And the district court, in another order, imposed sanctions on the defendants. A copy of relevant parts of that order is also attached as Exhibit B.
I vote to affirm the judgment of the district court in each respect, including the sanctions order, except that I would vacate the judgment of the district court as to Item 4, listed in Part I above, only on the ground it is unnecessary, the school board having given no indication that it will not comply with the orders of the court in this case.
II.
Despite universally accepted appellate procedure that we review judgments, not opinions, the other members of this court, without mention of the judgment of the district court, have divided a per curiam opinion into four issues, only the last two of which, concerning injunctive relief and sanctions, relate directly to the judgment of the district court we are reviewing. The first two issues, as stated in the per curiam opinion of the court, are phrased by a floating majority.
Only because each of those majorities declines to vote to affirm or reverse the various items of the judgment of the district court, I will attempt to relate my votes to the per curiam opinion.
As to Item 1, I vote that the school system has achieved unitary status. Also as to Item 1,1 vote that the attorneys’ fees for work done on the unitary status issue, and any other issue tried in this case, except a few dollars relating to Miss Ca-pacchione’s moving, should be granted. The majority, however, while it denies fees on “the unitary status issue,” apparently does not immediately mention the fees of Miss Capacchione’s attorneys, amounting to the sum of about $700,000, and one might think from reading the per curiam opinion that they were yet awarded were it not for the next-to-the-last line of the per curiam opinion denying fees “for any reason.”
As to Item 2 of the per curiam opinion, I am in agreement with the district court, that the school board should have come back to it for authority to establish magnet schools in which the race of the applicant was considered in deciding whether or not to grant admission. The district court so construed its own orders, which it is best able to do, and to which we must give due deference. Anderson v. Stephens, 875 F.2d 76, 80 n. 8 (4th Cir.1989); Vaughns v. Board Educ. of Prince George’s County, 758 F.2d 983, 989 (4th Cir.1985). I need go no further to affirm the holding of the district court. I am of opinion that Miss Capacchione’s Constitutional rights were violated when she was not considered for admission to the magnet school program notwithstanding her race and that she is entitled to nominal damages on that account. Norwood v. Bain, 166 F.3d 243 (4th Cir.1999) (en banc).
Also as to Item 2, although I feel that the question of immunity has little or nothing to do with this case, because it is being used to rationalize that the successful attorneys do not get their attorneys’ fees and that nominal damages for a Constitutional violation are not due, I vote that the school board did not have immunity from the payment of attorneys’ fees, nor immu *358 nity from nominal damages, that is to say, in the language of the per curiam opinion, it has been forfeited.
As to Items 3 and 4, the per curiam opinion correctly states my votes.
III.
With only slight interruptions, this case had been on inactive status for 22 years until Christina Capacchione started the present litigation when she filed her first complaint on September 5, 1997, seeking to be considered for admission to the magnet school program without regard to her race. When, on March 6,1998, the district court ordered the Swann litigation reactivated, upon the motion of the Swann plaintiffs, it consolidated the Capacchione suit with the Swann litigation. Miss Ca-pacchione then amended her complaint on March 16, 1998, to request a declaration that the school system had reached unitary status and moved on March 19, 1998 to intervene in the reactivated Swann litigation, which motion was granted. The Grant plaintiffs subsequently filed their complaint and motion to intervene in the Swann litigation on April 8,1998.
When Christina Capacchione filed her suit, the Charlotte-Mecklenburg schools were only admitting students to the magnet school program after having considered their race, and the school system was submitting itself to the racially-based pupil assignments imposed in response to the orders of the district court some years before, the suit having then been inactive for some 22 years. Now, four years and almost $1.5 million later, and over the determined opposition of the school board, the school system has been held to be unitary and the magnet schools may no longer consider the race of the applicant in granting or denying admission. All this is at the instance of Christina Capacchione.
When the Swann plaintiffs filed their suit in 1965, more than 35 years ago, their complaint was that the race of students was considered in determining their assignment to schools, precisely the same complaint that Christina Capacchione had in 1997. When the Swann case was declared to be inactive in 1975, the district court, at that time, awarded attorneys’ fees and costs to the plaintiffs’ attorneys, for service through 1974, in the amount of $204,072.33, and there are doubtless other such items not presently readily available to me. For us to hold now that the Capac-chione child and the Grant plaintiffs are not entitled to the same consideration, as were the Swann plaintiffs, for eradicating racial assignments is certainly not fair and not even legal, in my opinion. How we are able to hold that the Capacchione and Grant plaintiffs and intervenors in this case are not successful parties in a § 1983 action strains reason beyond the breaking point. In my opinion, they are due costs, expenses, and attorneys’ fees, etc. under 42 U.S.C. § 1988.
Especially to the holding of the en banc court, that the Capacchione and Grant plaintiffs and intervenors are not entitled to attorneys’ fees and costs, etc., I respectfully dissent.*
*359 EXHIBIT A
IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF NORTH CAROLINA CHARLOTTE DIVISION
[[Image here]]
*360 JUDGMENT
In accordance with the Memorandum of Decision and Order filed simultaneously with this Judgment, IT IS ORDERED ADJUDGED, AND DECREED that the Charlotte-Mecklenburg Schools ("CMS") are hereby declared unitary in all respects.
rr IS FURTHER ORDERED, ADJUDGED, AND DECREED that all prior injunctive orders or decrees entered in Swann v. Charlotte-Mecklenburg Bd. of Educ., No. 1974 (W.D.N.C.), are VACATED AND DISSOLVED, and Swann is hereby DISMISSED WITH PREJUDICE.
IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that Capacchione and Grant et al. (the "Plaintiff Intervenors") are not entitled to an award of actual damages, but CMS shall pay nominal damages to the Plaintiff-Intervenors in the amount of one dollar ($1.00).
IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that CMS is enjoined from assigning children to schools or allocating educational opportunities and benefits through race-based lotteries, preferences, set-asides, or other means that deny students an equal footing based on race.
IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that CMS shall pay the reasonable attorneys’ fees, expert fees, and costs of the Plaintiff-Intervenors.
This the 9th day of September 1999.

Is/

ROBERT D. POTTER
SENIOR UNITED STATES DISTRICT JUDGE
*361 EXHIBIT B
IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF NORTH CAROLINA CHARLOTTE DIVISION
[[Image here]]
*362 [[Image here]]
ORDER
THESE MATTERS are before the Court on a Motion by Plaintiff Capacchione and Plaintiff-Intervenors Grant et al. (hereinafter collectively "Grant"), filed April 16, 1999, for Sanctions against Charlotte-Mecldenburg Board of Education for Non-Disclosure of Witnesses [document no. 152], Defendants Charlotte-Mecldenburg Schools et al. ("CMS") filed a response on April 19, 1999.
NOW, THEREFORE, IT IS ORDERED that Grant’s Motion for Sanctions against Charlotte-Mecldenburg Board of Education for Non-Disclosure of Witnesses [document no. 152] be, and hereby is, GRANTED.
This the 23rd day of April 1999.

Is/

The Honorable Robert D. Potter Senior United States District Judge
*363 EXHIBIT C

Fees and Hours by Firm

Total expended on merits of the suit by both Grant and Capacchione = Fees and costs of $1,481,295.47 and 6,428.95 hours
Total expended on fee petition by both Grant and Capacchione = Fees and costs of $17,721.00 and 74.35 hours
Total expended on all litigation (including fee petition) by all plaintiffs = $1,499,016.47 and 6,503.2 hours
A. Counsel for Capacchione
(1) McGuire Woods Battle & Booth (John Pollard & Kevin Parsons)
Fees on the merits = $390,791.98
Attorney and staff Hours on the merits = 1,954.5
Fees for bringing fee petition = $4,000.00
Attorney and staff hours for bringing fee petition = 21.2
(2) Magenheim, Bateman, Robinson, Wrotenbery & Helfand (William Helfand)
Fees on the merits = $325,331.51 .
Attorney and staff Hours on the merits - 1,553.85
Fees for bringing fee petition = $3,372.50
Attorney and staff hours for bringing fee petition - 17.8
Total for Capaccione on the merits = $716,123.49 and 3,508.35 hours Total for Capaccione for bringing fee petition = $7,372.50 and 38.9 hours
B. Counsel for Grant Plaintiffs
(1) Parks, Chesin & Miller (A. Lee Parks) Fees on the merits = $471,794.00
Attorney and staff Hours on the merits = 2,160.7
*364 Fees for bringing fee petition = $9,750.00
Attorney and staff hours for bringing fee petition = 32.50
(2) Thomas Ashcraft
Fees on the merits = $159,579.00
Attorney and staff Hours on the merits = 759.9
Fees for bringing fee petition = $598.50
Attorney and staff hours for bringing fee petition = 2.85
(3) In a supplemental order, Judge Potter awarded Parks and Ashcroft jointly $133,798.98 for expenses incurred litigating the merits.
Total for Grant Plaintiffs on the merits = $765,171.98 and 2,920.6 hours
Total for Grant Plaintiffs for bringing fee petition = $10,348.50 and 35.35 hours

 My summary of such fees and costs is attached as Exhibit C.